**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JAMES AUTRY,

    Plaintiff,

v.                                                              Case No. 11-12462

UNITED STEEL, PAPER AND FORESTRY,
RUBBER MANUFACTURING, ENERGY,
ALLIED INDUSTRIAL & SERVICE WORKERS
INTERNATIONAL UNION, et al.,

    Defendants.
                                             /

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Before the court are Defendants United Steel, Paper and Forestry, Rubber Manufacturing, Energy, Allied Industrial & Service Workers International Union ("USW"), United Steel Workers Union-Local 1299 ("Local 1299"), James Allen, and Caesar Randazzo's (collectively, the "Union Defendants'"") and Defendant United States Steel Corporation's ("United States Steel's") motions for summary judgment. Defendants' motions are unopposed. After reviewing the motions, the court concludes that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For the reasons stated below, the court will grant both motions.

**I. BACKGROUND**

Prior to his termination in September 2009, Plaintiff James Autry was employed by Defendant United States Steel as an electrician and maintenance technician at the Great Lakes Works steel facility in Ecorse, Michigan. (Autry Dep. 114:18-115:9 (Jan. 19, 2012), Dkt. # 42-4.) Defendant United States Steel and Defendant USW are parties to a collective bargaining agreement, referred to by the parties as the Basic Labor

Agreement, that governs the terms and conditions of employment for all bargaining-unit employees employed by Defendant United States Steel at the Great Lakes Works facility. (Basic Labor Agreement art. I § A, Dkt. # 42-2.) USW is the exclusive representative of bargaining-unit employees at the plant. (*Id.* at art. II § A(1).) No party disputes that Plaintiff was a member of USW and a bargaining-unit employee whose employment was subject to the terms of the Basic Labor Agreement.

In December 2008, as a result of Defendant United States Steel idling the Great Lakes Works facility, Plaintiff was laid off. (Autry Dep. 13:24-14:7.) In the summer of 2009, Defendant United States Steel recalled Plaintiff and directed him to report to the plant's medical department on August 20, 2009, for a return-to-work physical examination. (*Id.* at 14:21-24.) The examination required Plaintiff to submit hair and urine samples for drug and alcohol analysis. (*Id.* at 16:22-17:2.) After the hair sample was collected, Plaintiff signed an envelope in which the sample was placed certifying that he was the test subject and he witnessed the sample collector seal the envelope. (*Id.* at 17:6-18:11.) The hair sample was sent to Psychemedics Corporations, (Psychemedics Custody and Control Form, Dkt. # 42-6), one of only two testing laboratories approved by the United States Food and Drug Administration ("FDA") to conduct hair sample drug analysis, (Arbitration Award ¶ 4, Dkt. # 42-12). Following the lab's determination that the hair sample tested positive for cocaine and a cocaine metabolite, Dr. Susan Madden, a doctor employed in Defendant United States Steel's medical department at the Great Lakes Works facility, informed Plaintiff of the positive result. (Autry Dep. 130:13-131:4.)

On August 27, 2009, Defendant United States Steel notified Plaintiff that his positive drug test violated the Great Lakes Works facility's employee conduct rules and imposed an initial five-day suspension pursuant to the Basic Labor Agreement. (Notification of Violation of Plant Safety and Employee Conduct Rules (Aug. 27, 2009), Dkt. # 42-7.) According to the Basic Labor Agreement, Defendant United States Steel "may affirm, revoke, extend or modify the suspension or convert the suspension to a discharge" following a preliminary hearing on the disciplinary action. (Basic Labor Agreement art. 5 § I(9)(b)(5), Dkt. # 42-2.) At the request of Plaintiff and Defendant USW, Defendant United States Steel conducted a preliminary hearing, referred to colloquially as a 9B hearing, on September 2, 2009. (Autry Dep. 19:14-25; Second Step Minutes 1 (Sept. 29, 2009), Dkt #. 42-11.) At the hearing, Plaintiff stated that he did not use cocaine or any other illegal drugs. (*Id.* at 20:7-18.) In response to Plaintiff's denial of drug use, Plaintiff claims that Defendant United States Steel's manager of labor relations, Michael Simpson said, "I have heard all of this before[;] that's what they all say." (*Id.*) Defendant USW of Plaintiff also raised during the hearing the possibility that Metformin (also known by the brand name Glucophage), a diabetic medication taken by Plaintiff, could have caused a false positive. (Allen Decl. ¶ 14, Dkt. # 41-2.) As required by the Basic Labor Agreement, Defendant United States Steel offered Plaintiff a last chance agreement ("LCA") in lieu of discipline that would permit Plaintiff to remain employed subject to rehabilitative counseling and random drug and alcohol testing. (Autry Dep. 20:15-21:11.) Plaintiff declined to enter into an LCA. (*Id.* at 22:8-9.) Following confirmation from Dr. Susan Madden, a doctor employed in Defendant United States Steel's medical department, that "Metformin cannot be mistaken as

3

cocaine on a forensic drug analysis," (Email from Dr. Susan Madden to Michael Simpson (Sept. 3, 2009, 12:37 EDT), Dkt. # 42-8), Defendant United States Steel converted Plaintiff's five-day suspension into a discharge, (Discharge Notification (Sept. 3, 2009), Dkt. # 42-9).

At Plaintiff's request, Defendants USW Local 1299 filed a grievance challenging the discharge. (Autry Dep. 33:7-13; Allen Decl. ¶ 8.) At some point after the preliminary hearing, Defendant James Allen, Local 1299's grievance committee chairperson, conducted additional research into the feasability of the false-positive theory raised at the hearing. (Allen Decl. ¶¶ 8-15.) A doctor employed by Bristol-Myers Squibb, the manufacturer of Glucophage, informed Defendant Allen that he knew of no study or information indicating that Glucophage or Metformin could cause a false-positive drug test result. (*Id.* at ¶ 12.) Defendant Allen also asked Plaintiff to obtain a professional opinion from his personal doctor as to whether Metformin or Glucophage could cause a false positive. (*Id.* at ¶ 15.) Autry submitted a letter signed by Dr. Charles Godoshian that states that "[i]t is not possible for [Plaintiff's] present illness or medication to produce a positive drug screen." (Letter from Dr. Charles Godoshian (Oct. 21, 2009), Dkt. # 41-8.) Defendant Allen presented his research relating to the false-positive theory to Local 1299 President Marc Barragan and Defendant Caesar Randazzo, the USW staff representative, who both agreed with Defendant Allen's assessment that the union could not present scientific evidence to support the false-positive theory and Plaintiff's denial of cocaine use would be insufficient to convince an arbitrator to disregard the test results and overturn Defendant United States Steel's discharge. (Allen Decl. ¶ 16; Randazzo Decl. ¶¶ 7-8, Dkt. # 41-3.) Defendants Allen, Randazzo,

4

and nonparty Barragan on several occasions recommended to Plaintiff that he accept the LCA, which apparently was still available after Plaintiff's initial rejection of the offer. (Randazzo Decl. ¶¶ 7-8.)

On September 29, 2009, a second-step grievance meeting was conducted pursuant to the Basic Labor Agreement grievance procedure. At this second hearing, Plaintiff and the Union Defendants informed Defendant United States Steel that, following his discharge, he had a new sample of his hair tested by a local laboratory and the result was negative. (Autry dep. 25:14-26:6.) The laboratory, however, was not certified by the FDA to conduct hair testing analysis. (*Id.* at 26:23-27:1.) Defendant USW requested that a second screening of Plaintiff's original hair sample be conducted by Psychemedics. (Second Step Minutes 2.) After initially declining to request a second screening, Defendant United States Steel determined that Psychemedics had retained Plaintiff's hair sample and requested a second test of the original sample. (Letter from Laura Lieb, RN, to Psychemedics (Sept. 30, 2009), Dkt. # 42-13.) Psychemedics retested the sample and informed Defendant United States Steel that the test once again indicated the presence of cocaine. (Arbitration Award ¶ 4.) Defendant United States Steel denied Plaintiff's grievance. (Second Step Minutes 3.)

After a third-step grievance meeting, during which Defendant United States Steel again denied Plaintiff's grievance, Plaintiff, through Defendant USW, sought arbitration. (Letter from Ceasar Randazzo to Kathy Fronzaglio and Michael Simpson (Dec. 2, 2009), Dkt. # 42-16.) The arbitration hearing was held on April 27, 2010. (Arbitration Award 2.) On the day of arbitration, Defendant United States Steel offered Plaintiff one last opportunity to accept an LCA and reinstatement to his prior position. (Allen Decl. ¶

21.) Plaintiff again rejected the LCA offer. (Autry Dep. 113:1-12.) During the arbitration hearing, Defendant USW proffered the testimony of Plaintiff and three other witnesses to support Plaintiff's claim that he did not use cocaine. (Allen Decl. ¶ 23.) Defendant United States Steel called Dr. Thomas Cairns, a certified forensic toxicologist and scientific advisor to Psychemedics, who attested to the accuracy of Psychemedic's test results and stated that Metformin could not cause a false-positive drug test. (Arbitration Award ¶¶ 4-6; Autry Dep. 49:11-14.) On August 31, 2010, the arbitrator ruled in favor of Defendant United States Steel and upheld Plaintiff's discharge. (Arbitration Award ¶¶ 16-20.)

Plaintiff initiated this action on February 24, 2011, in the Wayne County Circuit Court. Defendants were served with the complaint on or around May 19, 2011, and timely removed the action on June 7, 2011. Plaintiff alleges (1) a hybrid claim under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), against all Defendants; (2) a state-law intentional infliction of emotional distress claim against all Defendants; (3) a state-law wrongful discharge claim against Defendant United States Steel; (4) a discrimination claim under the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"), Mich. Comp. Laws § 37.1101-.1607, against Defendant United States Steel; and (5) a state-law defamation by implication claim against Defendant United States Steel. The Union Defendants and Defendant United States Steel filed motions for summary judgment on February 28 and 29, 2012, respectively. Plaintiff has not filed a response in opposition to either pending motion.

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the court "is not to 'weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.* at 497 (quoting *Anderson*, 477 U.S. at 251-52). "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [movant] is entitled to a verdict . . . ." *Anderson*, 477 U.S. at 252.

The party seeking summary judgment has the initial burden of showing the absence of a genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. It is not enough for the nonmovant to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmovant must sufficiently allege a fact that, if proven, "would have [the] effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop. L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (alteration in original) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)) (internal quotation marks omitted).

Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Alternatively, either party may carry its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(B). "The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan*, 342 F.3d at 497 (citing *Matsushita*, 475 U.S. at 587).

### III. DISCUSSION

Under Eastern District of Michigan Local Rule 7.1, a party opposing a dispositive motion *must* file a response, including a brief and any supporting documents, within twenty-one days after service of the motion. E.D. Mich. LR 7.1(c)(1), (e)(1)(B). In the instant case, the deadlines for Plaintiff to file responses to the Union Defendants' and Defendant United States Steel's motions were March 23 and 24, 2012, respectively. Plaintiff failed to oppose the motions and did not seek leave of the court for an extension to file his responses. Where "'a plaintiff fails to respond or otherwise . . . oppose a defendant's motion,'" as is the case here, a "'district court may deem the plaintiff to have waived opposition to the motion.'" *Humphrey v. United States Attorney Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (quoting *Scott v. Tennessee,* 878 F.2d 382, 1989 WL 72470, at *2 (6th Cir.1989) (unpublished table decision)). The court will nevertheless consider the merits of Defendants' motions below and conclude, based

8

on the uncontroverted facts, that Defendants are entitled to summary judgment on each of Plaintiff's claims.

### A. Plaintiff Has Failed to Produce any Evidence in Support of His Hybrid § 301 Claim

Although Plaintiff does not explicitly assert a hybrid claim under § 301 of the LMRA, the gravaman of his complaint is that he was wrongfully discharged by Defendant United States Steel and the Union Defendants breached a duty of fair representation by acting in bad faith during the grievance and arbitration process and by failing to adequately investigate Plaintiff's discharge. Defendants' implicitly construe these two interrelated assertions as a hybrid claim under § 301. The court agrees with this construction.

In order to prevail on a hybrid § 301 claim, a plaintiff must prove both that the union breached its duty of fair representation and that the employer breached the collective bargaining agreement. *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 583 (6th Cir.1994) (citation omitted). The two prongs are "inextricably interdependent," *DelCostello v. Teamsters*, 462 U.S. 151, 164 (1983) (internal quotation marks and citation omitted), and "unless a plaintiff 'demonstrates both violations, he cannot succeed against either party.'" *Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 542 (6th Cir. 2003) (footnote omitted) (quoting *Bagsby v. Lewis Bros. Inc. of Tenn.*, 820 F.2d 799, 801 (6th Cir.1987)).

The Union Defendants did not breach a duty of fair representation to Plaintiff. To prove a breach of the duty of fair representation, "an employee must demonstrate that the union's actions or omissions during the grievance process were arbitrary, discriminatory, or in bad faith." *Id.* Each of the three enumerated factors "are three

9

separate and distinct possible routes by which a union may be found to have breached its duty." *Black*, 15 F.3d at 584. "There is no requirement, however, that the grievance process be 'error-free.'" *Garrison*, 334 F.3d at 542. A plaintiff who succeeds in demonstrating that the union breached its duty of fair representation must then meet the onerous burden of showing that "the union's actions or omissions 'tainted the grievance procedure such that the outcome was more than likely affected by the Union's breach.'" *Id.* (quoting *Dushaw v. Roadway Express, Inc.*, 66 F.3d 129, 132 (6th Cir.1995)). The uncontroverted evidence shows that the Union Defendants represented Plaintiff throughout the grievance and arbitration process and investigated Plaintiff's claim that his diabetic medicine caused the positive drug test. Additionally, on numerous occasions, the Union Defendants advised Plaintiff to accept Defendant United States Steel's LCA offer, which would have permitted Plaintiff to return to work, but Plaintiff repeatedly refused and chose to role the dice and continue with the grievance and arbitration process. The Union Defendants actions throughout the process can hardly be described as "arbitrary, discriminatory or in bad faith." *Garrison*, 334 F.3d at 542. Consequently, the Union Defendants did not breach their duty.

Plaintiff has also not demonstrated that Defendant United States Steel violated the Basic Labor Agreement or that the arbitration decision should be disturbed. Where a plaintiff's breach of contract claim against an employer has been "submitted to and resolved by an arbitrator, that plaintiff will generally be unable to succeed on a hybrid § 301 claim." *Gilreath v. Clemens & Co.*, 212 F. App'x 451, 460 (6th Cir. 2007). "A court may not review the merits of an arbitration decision, even when the basis for the decision is ambiguous, as long as the award draws its essence from the bargaining

agreement." *Wood v. Int'l Bhd. Of Teamsters*, 807 F.3d 493, 500 (6th Cir. 1986). The Sixth Circuit has held that only four circumstances exist in which an

> arbitrator's determination will not withstand review: (1) a decision expressly contradicting the terms of the collective bargaining agreement; (2) a decision reading additional terms and requirements into the agreement; (3) a determination unsupported by the agreement or irrationally flowing from it; and (4) a result founded in generalized notions of 'fairness and equity,' and not specifically in the agreement's terms.

*Gilreath*, 212 F. App'x at 460 (citing *Dobbs, Inc. v. Local No. 614, Int'l Bhd. of Teamsters*, 813 F.2d 85, 86 (6th Cir.1987)). Here, the arbitrator concluded that, based upon the evidence presented during the hearing, Defendant United States Steel "had proper cause to discipline [Plaintiff] for having tested positive for drugs (Cocaine)." (Arbitration Award ¶ 19.) Specifically, the arbitrator found that Defendant United States Steel's actions, including the repeated offering of an LCA to Plaintiff, comported with Article 3-G of the Basic Labor Agreement and its decision to discharge Plaintiff did not contravene the Basic Labor Agreement. (*Id.*) Because Plaintiff has not presented any evidence revealing an error in the arbitrator's decision and the decision "draws its essence from the bargaining agreement," *Wood*, 807 F.3d at 500, the court may not disturb the arbitrator's conclusion that Defendant United States Steel did not breach its contractual obligations. Defendants are accordingly entitled to summary judgment on Plaintiff's hybrid § 301 claim.

### B. Plaintiff's State-law Intentional Infliction of Emotional Distress, Wrongful Discharge, and Defamation Claims are Preempted by § 301 of the LMRA

In addition to a hybrid § 301 claim, Plaintiff asserts four state-law claims against Defendants United States Steel and one state-law claim against the Union Defendants. Plaintiff's intentional infliction of emotional distress, wrongful discharge, and defamation

11

claims are preempted by state law. Section 301 of the LMRA "preempts any state-law claim arising from a breach of a collective bargaining agreement." *Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1329 (6th Cir. 1989) (en banc). A claim, however, is only preempted if the application of state law "requires the interpretation of a collective-bargaining agreement." *Lingle v. Norge Div. Of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988). In other words, "state tort claims can be maintained so long as they arise independently of the collective bargaining agreement." *Gilreath*, 212 F. App'x at 462. The Sixth Circuit has identified a two-pronged inquiry to determine whether a particular state-law claim is preempted by § 301.

> First, the district court must examine whether proof of the state law claim requires the interpretation of collective bargaining agreement terms. Second, the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law. If the right both is borne [sic] of state law and does not invoke contract interpretation, then there is no preemption. However, if neither or only one criterion is satisfied, section 301 preemption is warranted.

*DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994) (internal citations omitted).

*1. Intentional Infliction of Emotional Distress (Defendant United States Steel and the Union Defendants)*

The complaint does not allege any specific factual allegations in support of Plaintiff's intentional infliction of emotional distress claim and simply states that "Defendants acted in such a manner that was extreme and outrageous." (Compl. ¶ 76.) During his deposition, Plaintiff said that his IIED claim is based on his belief that Defendant United States Steel acted "hostile" toward him once he failed the drug test and Defendant Simpson's statement that he did not believe Plaintiff's denial of drug use. (Autry Dep. 128:7-129:15.) Because interpretation of the Basic Labor Agreement is

12

required to determine whether Defendants' actions related to the drug test and grievance process were extreme and outrageous, Plaintiff's intentional infliction of emotional distress claim is preempted by § 301. Even were the court to conclude that the claim is not preempted, Defendants would still be entitled to summary judgment because Plaintiff has failed to proffer any evidence that suggests the conduct of Defendants was extreme and outrageous.

Although the Michigan Supreme Court has not yet recognized the tort of intentional infliction of emotional distress, *see Smith v. Calvary Christian Church*, 614 N.W.2d 590, 593 n.7 (Mich. 2000), Michigan's intermediate appellate courts have recognized such claims, *see Nelson v. Ho*, 564 N.W.2d 482, 487 n.7 (Mich. Ct. App. 1997) (citations omitted) ("We feel it necessary to note that the tort of intentional infliction of emotional distress has yet to be formally recognized by the Michigan Supreme Court. However, this Court has recently recognized the cause of action."). The Sixth Circuit has held that if the Michigan Supreme Court were to recognize the cause of action, it "would adhere to the tort as defined by the Restatement (2d) of Torts." *Decoe*, 32 F.3d at 218 (citing *Polk v. Yellow Freight Sys., Inc.*, 801 F.2d 190, 195 (6th Cir. 1986)). Under the Restatement standard, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." Restatement (Second) of Torts § 46 (1965).

Plaintiff has the burden to prove the outrageousness of Defendants' conduct, and to satisfy this burden, Plaintiff must show that Defendants were not exercising their legal rights in a permissible manner. *See Decoe*, 32 F.3d at 219 (quoting *Polk*, 801 F.2d at

196) (holding that a defendant has not acted outrageously "'where he has done no more than to insist upon his legal rights in a permissible way, even though he was well aware that such insistence [wa]s certain to cause emotional distress'"). "Pursuant to the Restatement, reference must be made to the CBA in order to determine whether the defendants acted outrageousIt ily, or whether they merely pursued their legal rights in a permissible way." *Id.* at 220 (quotations omitted). Here, Plaintiff must show that the conduct of Defendant United States Steel and the Union Defendants was not an exercise of their legal rights under the Basic Legal Agreement. Because such a showing requires interpretation of the Basic Legal Agreement, Plaintiff's intentional infliction of emotional distress claim fails the *Mattis* preemption inquiry. As a result, Plaintiff's claim is preempted by § 301.

### 2. Wrongful Discharge Claim (Defendant United States Steel)

To the extent that Plaintiff's wrongful discharge claim against Defendant United States Steel relies on state tort law and is not a constituent part of the hybrid § 301 claim, it is preempted by § 301. Plaintiff alleges that he had "a reasonable [and] legitimate . . . expectation of just-cause employment," and "Defendant Steel breached its duty to terminate only for just-cause." (Compl. ¶¶ 51, 53.) Under Michigan law "employment relationships are terminable at the will of either party." *Lytle v. Malady*, 579 N.W.2d 906, 910 (Mich. 1998) (citing *Lynas v. Maxwell Farms*, 273 N.W. 315 (Mich. 1937)). "The presumption of employment at will is overcome with proof of either a contract provision for a definite term of employment, or one that forbids discharge absent just cause." *Id.* (citing *Toussaint v. Blue Cross & Blue Shield of Mich.*, 292 N.W.2d 880 (Mich. 1980)). To prove a wrongful discharge claim based on legitimate

14

expectations—the claim asserted by the Plaintiff—Michigan law requires a plaintiff to satisfy a two-step inquiry. "The first step is to decide 'what, if anything, the employer has promised,' and the second requires a determination of whether that promise is 'reasonably capable of instilling a legitimate expectation of just-cause employment.'" *Id.* at 911 (quoting *Rood v. General Dynamics, Inc.*, 507 N.W.2d 591, 606 (Mich. 1993)).

In order to determine whether Plaintiff had a legitimate expectation of "just-cause employment," the court must analyze and interpret the relationship and contracts between Defendants United States Steel and USW and Plaintiff. Because Plaintiff's complaint alludes to only one contract, the Basic Labor Agreement, the court concludes that Plaintiff's alleged expectation of "just-cause employment" and Defendant United States Steel's breach of a duty of "just-cause employment" arises from the Basic Labor Agreement. Having concluded that Plaintiff's wrongful discharge claim is premised on an expectation of "just-cause employment" derived from the Basic Labor Agreement, the court finds that the claim is preempted by § 301.

### 3. Defamation Claim (Defendant United States Steel)

"In order to determine whether plaintiff's defamation claim requires interpretation of the collective bargaining agreement, [the court] must examine the elements of defamation under Michigan law." *Decoe*, 32 F.3d at 217. In Michigan, a plaintiff must prove the following elements to establish a prima facie case of defamation:

> (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication.

*Mitan v. Campbell*, 706 N.W.2d 420, 421 (Mich. 2005). Determining whether Plaintiff

15

satisfies the unprivileged communication element requires the court to ascertain whether Defendant United States Steel is protected by qualified immunity. "'Qualified immunity . . . extends to all communications made *bona fide* upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty to a person having a corresponding interest or duty.'" *Merrit v. Detroit Memorial Hosp.*, 265 N.W.2d 124, 127 (1978) (quoting *Bacon v. Mich. Cent. Ry. Co.*, 33 N.W. 181, 183 (1887)).

*Decoe* is instructive on the preemptive effect of § 301 on state-law defamation claims where an alleged publication may be privileged. In *Decoe*, the plaintiff alleged that his co-workers and the company committed defamation by participating in CBA-governed sexual harassment claim resolution. *See Decoe*, 32 F.3d at 214-15. The Sixth Circuit held that the plaintiff's defamation claim was preempted by § 301 because "it [was] difficult to understand how the plaintiff could establish that the challenged publications were unprivileged—which was his burden under Michigan law—without interpreting the CBA provisions that identified the duties imposed on all defendants." *Id.* at 217.

Interpretation of the Basic Labor Agreement in the instant case is also required in order for Plaintiff to establish that Defendant United States Steel's alleged publications were unprivileged because, like the defendants in *Decoe*, Defendant United States Steel's duties and policies relating to drug testing are set forth in the Basic Labor Agreement. In the complaint, Plaintiff alleges that "Defendant Steel made representations that implied Plaintiff was a drug user," and "Defendant Steel has a policy that those who have been discharged for failed drug tests will be stopped at the

16

company entrance . . . [which] causes a large amount of other employees to visually see what is going on and know the reason for the stop." (Compl. ¶¶ 60, 65.) First, Plaintiff has proffered no evidence in support of these factual allegations, a burden he bears in defending against a motion for summary judgment. Even assuming, *arguendo*, that Plaintiff could substantiate the factual allegations contained in the complaint, whether these purported publications were privileged depends, in part, on Defendant United States Steel's rights and obligations under the Basic Labor Agreement. Therefore, Plaintiff's defamation claim is preempted by § 301 and summary judgment will be entered in favor fo Defendant United States Steel.

### C. Plaintiff Fails to Establish a Prima Facie Case of Discrimination Under the PWDCRA

Plaintiff's fourth state-law claim alleges that Defendant United States Steel's actions related to the discharge of Plaintiff violated the PWDCRA. Unlike the other three state-law claims, the PWDCRA claim is not preempted by § 301 because it neither requires the interpretation of the terms of the Basic Labor Agreement nor is based upon rights created by the Agreement. *Decoe*, 32 F.3d at 216. However, because Plaintiff has not established a prima facie case under the PWDCRA, Defendant United States Steel is entitled to summary judgment. A plaintiff establishes a prima facie case of discrimination under the PWDCRA only where he shows that "(1) he is 'disabled' as defined by the statute, (2) the disability is unrelated to the plaintiff's ability to perform the duties of a particular job, and (3) the plaintiff has been discriminated against in one of the ways set forth in the statute." *Chiles v. Machine Shop, Inc.*, 606 N.W.2d 398, 405 (Mich. App. Ct. 1999). The statute defines a "disability" as one or more of the following:

    (i) A determinable physical or mental characteristic of an individual, which

may result from disease, injury, congenital condition of birth, or functional disorder, if the characteristic:

>(A) For purposes of article 2, substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position or substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's qualifications for employment or promotion.

>. . .

>(ii) A history of a determinable physical or mental characteristic described in subparagraph (I).

>(iii) Being regarded as having a determinable physical or mental characteristic described in subparagraph (I).

Mich. Comp. Laws § 37.1103(d).

In the complaint, Plaintiff alleges that his diabetes constitutes a "disability" under the PWDCRA and Defendant United States Steel apparently discriminated against him by failing to accept Plaintiff's claim that his diabetes medicine triggered the positive drug test. (Compl. ¶¶ 38-44.) Plaintiff has not proffered any evidence in support of his claim that his diabetic condition limits any major life activities and therefore qualifies as a "disability" under the PWDCRA. Nor has he shown that he was discriminated against in a manner proscribed by the PWDCRA. Indeed, during his deposition, Plaintiff stated that since his diagnosis as a diabetic in the 1980's, he had been on medication and he never needed any accomodations at his job. (Autry Dep. 115:19-116:10.) Because Plaintiff has failed to present evidence establishing a prima facie case of discrimination under the PWDCRA, summary judgment will be entered in favor of Defendant United States Steel on this claim.

## IV. CONCLUSION

For the reasons stated above, IT IS ORDERED that the Union Defendants' motion for summary judgment [Dkt. # 41] is GRANTED.

IT IS FURTHER ORDERED that Defendant United States Steel's motion for summary Judgment [Dkt. # 42] is GRANTED.

                                         s/Robert H. Cleland
                                         ROBERT H. CLELAND
                                         UNITED STATES DISTRICT JUDGE

Dated: April 30, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 30, 2012, by electronic and/or ordinary mail.

                                         s/Lisa Wagner
                                         Case Manager and Deputy Clerk
                                         (313) 234-5522